915 A.2d 23 (2007)
390 N.J. Super. 166
NEW JERSEY BUILDERS ASSOCIATION, Plaintiff-Appellant,
v.
NEW JERSEY COUNCIL ON AFFORDABLE HOUSING, an agency of the State of New Jersey, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 2006.[*]
Decided January 24, 2007.
*25 Thomas F. Carroll, III, Princeton, argued the cause for appellant New Jersey Builders Association (Hill Wallack, attorneys; Mr. Carroll, on the brief).
Pamela E. Gellert, Deputy Attorney General, argued the cause for respondent New Jersey Council on Affordable Housing (Zulima V. Farber, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Ms. Gellert, on the brief).
Thomas J. Cafferty, Lyndhurst, argued the cause for amicus curiae New Jersey Press Association (Scarinci & Hollenbeck, attorneys; Mr. Cafferty, of counsel; Nomi I. Lowy, on the brief).
Before Judges STERN, GRALL and KING.
The opinion of the court was delivered by
GRALL, J.A.D.
Plaintiff New Jersey Builders Association (NJBA) filed an action in the Law Division to obtain public records held by defendant New Jersey Council on Affordable Housing (COAH), Department of Community Affairs. NJBA asserted rights of access under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law. NJBA alleged that "without any legal justification," COAH said it would provide the information beyond the seven-day deadline provided in OPRA, N.J.S.A. 47:1A-5(i).[1] Judge Feinberg dismissed NJBA's complaint after COAH *26 produced the documents it had and created additional documents responsive to NJBA's demands for information. The judge determined that NJBA was not a prevailing party entitled to fees pursuant to N.J.S.A. 47:1A-6. NJBA appeals from the order denying its request for fees.
We granted the New Jersey Press Association (Press Association) leave to participate as amicus curiae. After oral argument, we directed NJBA to provide transcripts of the hearing that led to the dismissal of its complaint and directed both parties to provide additional briefs discussing the relevance of this court's decision in MAG Entertainment, LLC v. Division of Alcoholic Beverage Control, 375 N.J.Super. 534, 546, 868 A.2d 1067 (App. Div.2005), which was issued after Judge Feinberg denied NJBA's fee application. Those briefs were filed on October 2, 2006.
We hold that NJBA was not entitled to fees as a prevailing party under OPRA. N.J.S.A. 47:1A-6. Because NJBA's request did not specifically identify the documents it sought, as required by N.J.S.A. 47:1A-5(f), OPRA did not require COAH to produce the records within seven business days, N.J.S.A. 47:1A-5(i). Moreover, NJBA's request required COAH's custodian to survey COAH employees, gather responsive information and produce new documents. Because OPRA does not require an agency to perform such tasks and because NJBA needed more than ten business days to review COAH's response, COAH established that compliance within seven business days would "substantially disrupt" COAH's operations. N.J.S.A. 47:1A-5(g). Accordingly, pursuant to N.J.S.A. 47:1A-5(g), COAH was authorized to offer a "reasonable solution"  production at a later date  that accommodated the needs of NJBA and COAH. COAH established that its response was "authorized by law," and, for that reason, NJBA was not entitled to an attorney's fee pursuant to N.J.S.A. 47:1A-6.
The essential facts are undisputed. On October 6, 2003, COAH proposed new rules for determination of fair-share housing obligations. 35 N.J.R. 4636(a). On August 16, 2004, COAH reproposed those rules. 36 N.J.R. 3691(a).
On August 19, 2004, NJBA submitted a request for government documents using a "Government Records Request Form" made available by COAH. The form provides space for "Record Request Information." COAH's form directs: "To expedite the request, be as specific as possible in describing the records being requested." In the space provided, NJBA simply referenced "Attachment `A,'" which is a five-page document listing thirty-eight separate requests all of which include a request for "any and all documents and data." A thirty-ninth request asked COAH to advise where documents not in the possession of DCA, COAH or its consultant, Dr. Burchell, could be obtained.
NJBA's thirty-eight requests describe the documents and data sought as those "used" or "considered" by COAH or "support[ing]," "demonstrat[ing]," "justif[ying]" or "verif[ying]" various determinations relevant to COAH's determinations about fair-share housing obligations. For example, NJBA's tenth request was for "[a]ny and all documents and data which [were] relied upon, considered, reviewed, or otherwise utilized by any employee or staff member of COAH or DCA, or by Dr. Burchell in calculating the second proposed third round affordable housing methodology and the regulations proposed on July 13, 2004 to be published in August 2004."
On August 27, 2004, within six business days of NJBA's request, COAH's "Records Custodian" responded. The custodian's *27 response advises that NJBA's "submission" includes thirty-nine "separate requests for information," and explains that "due to the enormity of the request, COAH requires additional time with which to assess the submittal and gather the relevant information." The custodian informed NJBA that COAH could not provide the information until September 20, 2004.
NJBA notified COAH that it would agree to the September 20 date only if COAH agreed to extend the period for public comment on its proposed regulations. The last of four public hearings on COAH's proposal was scheduled for September 29, 2004, and the public comment period was scheduled to close on October 15, 2004. 36 N.J.R. 3691(a).
On September 9, 2004, NJBA commenced this action in the Law Division to enforce its rights under OPRA and the common law. The Law Division set a briefing schedule and a return date of October 13, 2004.
By letter dated September 14, 2004, COAH responded to many of NJBA's requests. Several responses referred NJBA to materials published in "N.J.A.C. 5:94," the proposed rules, the "Comment and Response Document" and Appendices and Tables accompanying COAH's rule proposal. COAH also invited NJBA to arrange an appointment to review public comments. In other instances, COAH either provided the documents or indicated that it had no documents of the sort requested in its possession. COAH also advised that it would submit additional responsive information, which was in the possession of Dr. Burchell, by September 20, 2004.
On September 20, 2004, COAH's offices were closed due to flooding in Trenton. On September 21, 2004, Dr. Burchell's materials, which included materials he produced to respond to NJBA's information request, were sent to NJBA.
On October 6, 2004, the tenth business day after NJBA claims that it received COAH's response, NJBA asked the judge to postpone the October 13, 2004 hearing because its expert needed more time to review the materials and list "items that [NJBA] believes COAH must still respond to by October 13, 2004." That request was granted.
Five days later, on October 11, 2004, NJBA's expert identified two deficiencies and made two demands. NJBA's first demand was: "COAH must provide the research literature or statistical analyses it used to conclude that the proposed formula accurately estimates substandard housing occupied by the poor or explicitly admit that there is no basis to its formula." NJBA's second demand was similar. NJBA noted that because COAH had not made specified calculations available, "it [was] impossible to evaluate the soundness or the accuracy of its determinations." Asserting that COAH must have performed certain calculations and applied specific criteria, NJBA's expert asked for those calculations and criteria. NJBA summarized his demand: "It is anticipated that COAH has a chart, similar to its October 1993 Municipal Number Summary, that must be shared with NJBA. In the alternative, COAH should explicitly admit that it has no data or any explanation as to the manner in which it recalculated the 1987-1999 prospective need."
On October 20, 2004, COAH advised that it had not maintained any responsive documents but was enclosing a response that its consultant had prepared for NJBA. On October 25, 2004, NJBA's expert acknowledged that COAH had responded to the first request but explained why he believed that COAH's consultant *28 had not adequately explained the data and tables he had prepared.
On November 4, 2004, Judge Feinberg heard argument. She described NJBA's request as "extensive," "thirty-nine separate requests for information," and she found that COAH's offer to produce by September 20 was "not unreasonable." The judge questioned why NJBA had not agreed to that date. NJBA's attorney could not say how many documents NJBA had provided, noting that COAH also had provided information on disc, and did not offer an explanation for NJBA's decision to commence litigation. Although Judge Feinberg found that any delay on COAH's part was "reasonable" and found no "problems with regard to the agency's response," she gave NJBA an additional opportunity to demonstrate that COAH had not complied.
By letter dated November 17, 2004, COAH supplied additional documents created by its expert in response to a letter from NJBA dated November 10, 2004.[2] In that letter COAH explains that in an effort to resolve the dispute, COAH asked its expert to create new documents responsive to NJBA's request for information. On November 16, 19 and 24, 2004, NJBA's expert complained that COAH had not provided any explanation of the numbers or the criteria it used.
On January 18, 2005, NJBA's complaint was dismissed with prejudice, a ruling which NJBA does not challenge. On January 20, 2005, NJBA moved for fees pursuant to N.J.S.A. 47:1A-6. NJBA sought an attorney's fee in the amount of $18,897 and an expert's fee in the amount of $3,052.50.
On March 4, 2005, Judge Feinberg determined that NJBA was not a prevailing party within the meaning of N.J.S.A. 47:1A-6. She found that "[f]rom a quantitative and qualitative perspective, [NJBA's] request was broad and cumbersome," COAH supplied several hundred pages of responsive documents by September 14, 2004, and the remaining responsive documents by September 21, 2004, which was one day later than COAH had promised because of the closure of State offices. Considering the "magnitude and complexity" of NJBA's request, the judge found COAH's need for "an additional twenty-four [calendar] days" reasonable and COAH's response timely and reasonable. Judge Feinberg concluded that NJBA filed its complaint in the Law Division "prematurely" and without giving "COAH a reasonable opportunity to respond."
We conclude that the denial of fees was proper. The question whether NJBA is entitled to fees pursuant to N.J.S.A. 47:1A-6 is one of statutory construction. The court's role is to determine the intent of the Legislature. See Pizzo Mantin Group v. Twp. of Randolph, 137 N.J. 216, 224, 645 A.2d 89 (1994). The task begins with the language of the relevant statutes, see ibid., and requires us to "consider the purpose of a statute by examining the Act in its entirety; . . . legislative history; and the common sense of the situation" in resolving any ambiguity. MCG Assocs. v. Dep't of Envtl. Prot., 278 N.J.Super. 108, 119-20, 650 A.2d 797 (App.Div.1994) (citations omitted).
OPRA "was enacted in 2002 to take the place of the former Right to Know Law." Gannett New Jersey Partners L.P. v. County of Middlesex, 379 N.J.Super. 205, 209, 877 A.2d 330 (App.Div.2005) (citations *29 omitted). Its "expansive definition of [government records] includes not only documents `made, maintained or kept on file in the course of [a public agency's] official business,' but also any document `received in the course of [the agency's] official business.'" Id. at 213, 877 A.2d 330 (quoting N.J.S.A. 47:1A-1.1). That definition, modified by the exemptions for records protected from disclosure, "demarks the outer limits of the statute's reach." MAG, supra, 375 N.J.Super. at 546, 868 A.2d 1067; See Bergen County Improvement Auth. v. North Jersey Media Group, Inc., 370 N.J.Super. 504, 509-10, 851 A.2d 731 (App.Div.) (noting that "the common law definition of `public record' is broader than the statutory definition of `government record' contained in N.J.S.A. 47:1A-1.1" and discussing OPRA's exemptions), certif. denied, 182 N.J. 143, 861 A.2d 847 (2004).
OPRA provides specific procedures for requests and responses. The purpose of OPRA "is to make identifiable [non-exempt] government records `readily accessible for inspection, copying, or examination.'" MAG, supra, 375 N.J.Super. at 546, 868 A.2d 1067 (quoting N.J.S.A. 47:1A-1). To that end, N.J.S.A. 47:1A-5(f) requires custodians of public records to develop forms for OPRA requests that "provide space for . . . a brief description of the government record sought," and N.J.S.A. 47:1A-5(i) requires the custodian to either grant access to the record identified or deny the request "as soon as possible, but not later than seven business days after receiving the request. . . ." "Thus, OPRA requires a party requesting access to a public record to specifically describe the document sought," Gannett, supra, 379 N.J.Super. at 211-12, 877 A.2d 330, and it provides that if the custodian of the record "fails to respond within [the time allowed], the failure to respond shall be deemed a denial of the request. . . ." N.J.S.A. 47:1A-5(i). A person denied access may commence litigation, and, if the agency fails to prove that its conduct was authorized by law, the court must compel access. N.J.S.A. 47:1A-6. A requestor who "prevails" is "entitled to a reasonable attorney's fee." Ibid.
OPRA identifies the responsibilities of the requestor and the agency relevant to the prompt access the law is designed to provide. The custodian, who is the person designated by the director of the agency, N.J.S.A. 47:1A-1.1, must adopt forms for requests, locate and redact documents, isolate exempt documents, assess fees and means of production, identify requests that require "extraordinary expenditure of time and effort" and warrant assessment of a "service charge," and, when unable to comply with a request, "indicate the specific basis." N.J.S.A. 47:1A-5(a)-(j). The requestor must pay the costs of reproduction and submit the request with information that is essential to permit the custodian to comply with its obligations. N.J.S.A. 47:1A-5(f), (g), (i). Research is not among the custodian's responsibilities.
OPRA does not contemplate "[w]holesale requests for general information to be analyzed, collated and compiled by the responding government entity." MAG, supra, 375 N.J.Super. at 546-49, 868 A.2d 1067. In MAG, we reached that conclusion after considering cases decided under similar statutes of other jurisdictions, including a case in which the "Washington Supreme Court held improper a request for `all books, records, [and] documents of every kind' related to a specific public transportation project." See MAG, supra, 375 N.J.Super. at 547, 868 A.2d 1067 (quoting Hangartner v. City of Seattle, 151 Wash.2d 439, 90 P.3d 26, 28 (2004) (alterations in original)). We observed that "[f]ederal courts, considering *30 the permissible scope of requests for government records under the Freedom of Information Act [FOIA], 5 U.S.C.A. § 522, have repeatedly held that the requested record must `be reasonably identified as a record not as a general request for data, information and statistics. . . .'" Id. at 548, 868 A.2d 1067 (quoting Krohn v. Dep't of Justice, 628 F.2d 195, 198 (D.C.Cir. 1980)). We held that OPRA does not compel government to review its files and analyze, collate or compile data. Id. at 549-50, 868 A.2d 1067; see Gannett, supra, 379 N.J.Super. at 211, 877 A.2d 330 (questioning whether a "request for `all information supplied to the U.S. Attorney or other federal authorities' in response to the grand jury subpoenas was a proper request for public records under OPRA").
There is an obvious connection between the specificity of the request and a custodian's ability to provide a prompt reply. The form for requests adopted by COAH explains the connection by advising the requestor as follows: "To expedite the request, be as specific as possible in describing the records being requested."
NJBA's claim of entitlement to an attorney's fee based upon allegedly untimely production highlights the relationship between a proper request and a prompt response that is critical to the purpose of OPRA. See N.J.S.A. 47:1A-1. Quite obviously, the seven-business-day rule, upon which NJBA rests its claim of denial, does not afford the custodian time to speculate about what the requestor seeks, research, survey agency employees to determine what they considered or used, or generate new documents that provide information sought. For that reason, the requestor's obligation "to specifically describe the document sought," Gannett, supra, 379 N.J.Super. at 212, 877 A.2d 330, is essential to the agency's obligation and ability to provide a prompt response. See MAG, supra, 375 N.J.Super. at 547, 868 A.2d 1067 (noting that in State ex rel. Dillery v. Icsman, 92 Ohio St.3d 312, 750 N.E.2d 156, 159 (2001), an attorney's fee was denied "because the request was improper due to the fact that it failed to identify the desired records with sufficient clarity").
NJBA's five-page, thirty-nine paragraph request bears no resemblance to the record request envisioned by the Legislature, which is one submitted on a form that "provide[s] space for . . . a brief description of the record sought." N.J.S.A. 47:1A-5(f). Viewed from the perspective of COAH's custodian, NJBA's tenth request, quoted above, required a survey of employees and Dr. Burchell before any attempt to compile the documents and data they "relied upon, considered, reviewed, or otherwise utilized." Rather than specifically describing the documents sought, NJBA asked COAH to select the documents and data. In short, NJBA asked COAH to identify the documents, which is NJBA's obligation under OPRA.
Descriptions of the sort NJBA gave COAH have been found inadequate by courts of other jurisdictions applying similar statutes, and this court has determined that OPRA should be applied in the same manner. See MAG, supra, 375 N.J.Super. at 546-49, 868 A.2d 1067. Because NJBA's request is so far removed from the type of OPRA request anticipated by the Legislature, we conclude that the related provisions of OPRA, those which require timely response and provide for an award of attorney's fees when such access is denied and litigation is required, have no application here. See N.J.S.A. 47:1A-5(i); N.J.S.A. 47:1A-6.
The Press Association contends that "OPRA does not provide for an automatic extension of the time to respond to a *31 request that an agency contends is lengthy and/or complex. . . ." We agree. Nonetheless, when a request is "complex" because it fails to specifically identify the documents sought, then that request is not "encompassed" by OPRA and OPRA's deadlines do not apply. See MAG, supra, 375 N.J.Super. at 549, 868 A.2d 1067; see also Teeters v. DYFS, 387 N.J.Super. 423, 425, 904 A.2d 747 (App.Div.2006) (discussing an award of an attorney's fee based upon delay when the request was for "Documents from DYFS Bureau of Licensing file on the adoption agency involved") (alterations omitted).
COAH advised NJBA of the improper nature of its request when, on the sixth business day after receipt, COAH informed NJBA that it could not respond until September 20, 2004. N.J.S.A. 47:1A-5(g), (i) (requiring an explanation of the "specific basis" for denial of access and requiring a response within seven business days). The custodian explained that NJBA's request did not identify the records NJBA sought by informing NJBA that its "submission" was "39 separate requests for information" that the custodian would be required to "assess." The custodian also explained the need for a later production date by noting "the enormity of the request" and the time required "to assess the submittal and gather the relevant information." See Gannett, supra, 379 N.J.Super. at 212-13, 877 A.2d 330 (discussing waiver); N.J.S.A. 47:1A-5(g) (requiring indication of the "specific basis" for a denial). COAH also advised that some of the information requested was not available because it was held by Dr. Burchell. See N.J.S.A. 47:1A-5(g) (discussing unavailability when a document is in use). COAH endeavored to comply but also alerted NJBA to and did not waive defects in NJBA's request or practical problems that required delivery on September 20, 2004. See Gannett, supra, 379 N.J.Super. at 212-13, 877 A.2d 330 (discussing waiver); N.J.S.A. 47:1A-5(g), (i).
We need not rest our decision in this case on NJBA's request alone. N.J.S.A. 47:1A-5 includes exceptions to the general rule that require a custodian to either "grant access . . . or deny a request . . . not later than seven business days after receiving the request." N.J.S.A. 47:1A-5(i). Those exceptions reflect the Legislature's intention to balance the requestor's interest in prompt access to identifiable records and the operational needs of government. Subsections (g) and (i) of N.J.S.A. 47:1A-5 must be read together.
In the first instance, the seven-business-day rule applies only if "the record is currently available and not in storage or archived." N.J.S.A. 47:1A-5(i).[3] "If the government record requested is temporarily unavailable because it is in use or in storage, the custodian shall so advise the requestor and shall make arrangements to promptly make available a copy of the record." N.J.S.A. 47:1A-5(g). If it is in storage or archived, the custodian must advise the requestor within seven business days and give the requestor a date on which the record will be provided. N.J.S.A. 47:1A-5(i).[4] The date selected by the custodian then becomes the deadline for compliance. Ibid. A custodian's failure to meet the promised deadline is then deemed a denial. Ibid.
*32 In a second instance, more pertinent to this case, "[i]f a request for access to a government record would substantially disrupt agency operations, the custodian may deny access to the record after attempting to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency." N.J.S.A. 47:1A-5(g). The conduct of COAH was consistent with this exception. Within six business days of receipt of NJBA's non-complying request, COAH's custodian advised that it could not comply until September 20, 2004, because NJBA's demand required the custodian to "assess" thirty-nine requests for information and then gather the information.
Although the statute does not give any guidance on the disruptions that should be deemed "substantial" or the solutions that should be deemed "reasonable" within the meaning of N.J.S.A. 47:1A-5(g), there is ample evidence of both in this case.
A request that does not comply with OPRA and demands assessment and preliminary inquiry of the sort required by NJBA's demand is sufficient to give rise to an inference that compliance will "disrupt agency operations." Disruption may be inferred because a request like NJBA's necessitates work by COAH employees that is neither assigned by the agency nor envisioned by OPRA.
There is persuasive evidence of the "substantiality" of the disruption that would have followed if COAH produced the information NJBA sought within seven business days. NJBA's expert, who simply had to review what COAH provided, needed more than ten business days to identify inadequacies. NJBA asked the trial court for additional time to complete that review. NJBA does not dispute the volume of the materials COAH provided or the fact COAH created new records to provide the information NJBA sought. We conclude that the Legislature would not expect or want courts to require more persuasive proof of the substantiality of a disruption to agency operations than the agency's need to survey employees, identify information and generate new records and the requestor's need for more than ten business days to review what the agency provided.
We also conclude that COAH's promise to supply the materials by September 20, 2004, which COAH honored one day late due to a closure of government offices in Trenton beyond COAH's control, was a "reasonable solution" that accommodated the interests of both NJBA and COAH. N.J.S.A. 47:1A-5(g).[5] NJBA contends that COAH's solution did not accommodate NJBA's needs because COAH did not agree to extend the comment period on its proposed regulations. NJBA filed its request on August 19, 2004, and COAH offered to respond by September 20, 2004. COAH's comment period did not close until October 15, 2004. Thus, the time NJBA had for review and comment was nearly equivalent to the time COAH had to identify, gather, generate and produce the information NJBA had requested. That solution reasonably accommodated the competing interests. More important, a requestor's status in separate proceedings neither diminishes nor expands the requestor's right of access to government records under OPRA. MAG, supra, 375 N.J.Super. at 543-46, 868 A.2d 1067.
N.J.S.A. 47:1A-5(c), which provides for the imposition of a special service charge when accommodation of a request "involves an extraordinary expenditure of *33 time and effort," cannot be read to compel COAH's custodian to comply with NJBA's demand within seven business days by charging a "service fee" to recoup extraordinary expenses for necessary labor. NJBA and the Press Association suggest that reading. The "service charge" authorized in subsection (c) of N.J.S.A. 47:1A-5 is one solution to a labor intensive demand but not the only solution. Subsection (g) of N.J.S.A. 47:1A-5 authorizes custodians to propose a broad range of "reasonable solutions" that accommodate competing interests when compliance would substantially disrupt agency operations.
We also reject the argument that the Legislature's failure to include a specific reference to operationally disruptive requests in subsection (i) of N.J.S.A. 47:1A-5, which states the seven-business-day rule and addresses extensions of time permitted when documents are archived or stored, precludes an extension necessitated by an operationally disruptive OPRA request. Subsection (g) of N.J.S.A. 47:1A-5 clearly permits outright denial of these requests after an attempt to reach a reasonable and mutually accommodating solution. OPRA's purpose is both to provide access to government records and to provide it promptly. N.J.S.A. 47:1A-1. Common sense precludes an assumption that the Legislature would intend to permit denial but prohibit reasonable solutions that involve brief delay.
Accordingly, the information before the Law Division was adequate to permit a finding that COAH met its burden of proof; COAH established that its failure to supply these documents within seven business days was authorized by law and not an improper "denial" of access under OPRA. See N.J.S.A. 47:1A-6. NJBA's request was not one that permitted a ready response by a custodian of records, which is what OPRA contemplates. N.J.S.A. 47:1A-1.1; N.J.S.A. 47:1A-5. Moreover, COAH's response was consistent with and authorized by N.J.S.A. 47:1A-5(g).
Federal courts addressing non-compliance with deadlines included in the FOIA may grant extensions when "the agency has been diligently working on the request, but has been unable to meet the deadline due to exceptional circumstances. . . ." See Morrow v. FBI, 2 F.3d 642, 644 (5th Cir.1993) (applying 5 U.S.C.A. § 552(a)(6)(C)). Exceptional circumstances have been found when "the volume of requests for information [are] vastly in excess of that anticipated by Congress." Ibid. (and cases cited therein). While the New Jersey Legislature did not include the same exceptional circumstances rule in OPRA, OPRA's exception based on substantial disruption is analogous. We hold that N.J.S.A. 47:1A-5(g) permits consideration of demands on agency operations imposed by the document request at issue.
There is no question that a delay in providing records in response to a proper OPRA request may amount to a denial of access under OPRA and entitle a person denied access to "prevail" if the agency does not establish that the delay is authorized by law. N.J.S.A. 47:1A-6; see Teeters, supra, 387 N.J.Super. at 430-34, 904 A.2d 747. Because COAH established that this delay was authorized by law, we need not consider whether NJBA could have been deemed to "prevail" if the delay were unauthorized. We note that COAH provided all documents, other than those that Dr. Burchell generated to address NJBA's demand, on a date consistent with a promise of delivery it made prior to commencement of this litigation. Nor is it necessary to consider whether the attorney's fee NJBA seeks is reasonable or whether *34 OPRA, which is designed to permit ready access to records the requestor has identified, permits an award of a fee to an expert retained to review documents an agency has provided.
The Press Association argues that a general reasonableness standard for timely compliance is inconsistent with and will undermine the seven-business-day rule adopted by the Legislature. This decision does not replace the seven-business-day rule with a general reasonableness standard. That is a matter for the Legislature. We simply hold that NJBA's request was not encompassed by OPRA, and COAH offered a reasonable solution given the substantial operational disruption posed by that request.
Affirmed.
NOTES
[*] Supplemental briefs were filed on October 2, 2006.
[1] The complaint includes a citation and reference to "OPRA," but erroneously refers to the Act as the "Open Public Meetings Act."
[2] Although NJBA has submitted COAH's response, it has not supplied its letter of November 10, 2004.
[3] At one point in the legislative process, the bill also exempted requests for more than one hundred pages from the seven-business-day rule, but that provision was eliminated by a Senate floor amendment on May 3, 2001. See Fifth Reprint of A. 1309 (2001).
[4] The statutory provisions are not entirely clear, but N.J.S.A. 47:1A-5(g) apparently permits delay necessitated when the document is currently unavailable because it is in use.
[5] NJBA does not challenge COAH's representation that all documents provided after September 21 were generated in order to provide information NJBA requested.