**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1467-22

DENNIS BENIGNO,

    Plaintiff-Appellant,

v.

NEW JERSEY OFFICE OF
THE STATE COMPTROLLER,
and ROBERT SHANE, in his
official capacity as Custodian of
Records of the NEW JERSEY
OFFICE OF THE STATE
COMPTROLLER,

    Defendants-Respondents.

_____

           Argued December 18, 2023 – Decided April 15, 2024

           Before Judges Gilson, DeAlmeida, and Berdote Byrne.

           On appeal from the Superior Court of New Jersey, Law
           Division, Mercer County, Docket No. L-1728-22.

           Jonathan Frederic Cohen argued the cause for appellant
           (Plosia Cohen LLC, attorneys; Jonathan Frederic
           Cohen, of counsel and on the briefs).

Elizabeth Diane Kern, Deputy Attorney General, argued the cause for respondents (Matthew J. Platkin, Attorney General, attorney; Raymond Robinson Chance, III, and Sara M. Gregory, Assistant Attorneys General, of counsel; Elizabeth Diane Kern, Deputy Attorney General, on the brief).

PER CURIAM

The Office of the State Comptroller (OSC) began an investigation into plaintiff's company, NJ Criminal Interdiction LLC d/b/a Street Cop Training (Street Cop Training), as a part of its review of various law enforcement reforms pursuant to the Police Accountability Project. Plaintiff, as Chief Executive Officer of Street Cop Training, served a request for documents on the OSC regarding the investigation, pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access (CLRA). The OSC denied the request because it sought large quantities of documents concerning ongoing investigations into plaintiff's company and various other law enforcement training institutions. Plaintiff then filed a verified complaint against the OSC for lack of access, arguing his requests were unlawfully denied and he was entitled to their production. The trial court dismissed the complaint, finding the requests were overbroad and improper, the requested records were subject to the ongoing investigation exception to OPRA, and plaintiff's interest

in the records was insufficient to satisfy a CLRA claim. We agree with the trial court and affirm.

I.

We glean the following facts from the record. On March 3, 2022, the OSC launched the Police Accountability Project "to review whether promised reforms in policing have been implemented and are working," as well as to "examine how New Jersey [police] departments are 'detecting and addressing inappropriate officer conduct' . . . ." The OSC sent a request to plaintiff for various documents relating to Street Cop Training. Plaintiff called the OSC to obtain more information regarding the reason for the request and was told the OSC was unable to disclose whether Street Cop Training was the target of an ongoing investigation, if there was an investigation, or what the investigation concerned.

Plaintiff then filed a complaint on June 7, 2022, alleging the OSC failed to establish the relevance of the requested documents, exceeded its statutory authority, violated the Administrative Procedure Act, and violated plaintiff's civil rights pursuant to the State Constitution and the New Jersey Civil Rights Act. The complaint sought to enjoin the OSC from compelling plaintiff to produce the documents, declare that the Police Accountability Project could not

regulate plaintiff's private business, restrain the OSC from making future document requests from plaintiff without establishing relevance, and grant plaintiff attorney's fees. Plaintiff refused to comply with the document request until its complaint was adjudicated.

In response, the OSC served plaintiff with a subpoena for the same documents. Plaintiff filed a motion to quash the subpoena and defendants filed a cross-motion seeking plaintiff's compliance. The trial court issued an order denying plaintiff's request to quash the subpoena and granted the motion to compel.

On August 8, 2022, plaintiff served an OPRA request on defendants, seeking:

> 1. Subpoenas issued by the Police Accountability Project or other subpoena . . . from November 1, 2021, until present;
>
> 2. To the extent not produced in response to [the above request], all subpoenas issued by the [OSC] to a private vendor since the creation of the [OSC];
>
> 3. Requests for the production of documents issued by the Police Accountability Project . . . from November 1, 2021, until present;
>
> 4. Documentation, correspondence, or other records in the possession of the Police Accountability Project or the [OSC] that relates to recent reforms in police

training as referenced in the March 3, 2022 press release issued by the OSC; and

5. Emails, text messages and other correspondence between . . . [OSC]. . . and . . . owners, agents or representatives of private police training, education and/or accreditation providers/consultants between November 1, 2021 and present.

OSC's custodian of records responded to plaintiff's OPRA request via email, stating:

> As an initial matter, to the extent your request seeks records you may already possess, we are not obligated to provide such records to you again.
>
>     . . . .
>
> . . . [P]lease be advised that OSC can neither confirm nor deny the existence of records in response to all five items of your OPRA request. . . . Furthermore, to the extent that any such records of investigations exist, your request must nevertheless be denied under N.J.S.A. 47:1A-3(a), which exempts from access records related to an ongoing investigation . . . .
>
> Please be further advised that [i]tems [two], [three], [four], and [five] of your request must be denied as improper and overbroad. OPRA does not allow a blanket request for every document a public agency has on file or a wholesale request for general information. . . . Because these requests fail to identify specific records, and [i]tems [two] and [four] in particular would require the [c]ustodian to conduct research to determine whether a subpoena was issued to a "private

5

vendor" or a record "relate[s] to recent reforms in police training," these requests must be denied.

Item [five] of your request is also denied . . . [because r]equests for correspondence under OPRA must identify the individuals or accounts to be searched and be confined to a discrete and limited subject matter. . . . Because your request fails to identify any subject matter, it must be denied.

You have also requested the above documents under the common law right of access. That request is denied because OSC's interests in protecting confidential documents from disclosure, to the extent any such documents exist, outweighs your interest in accessing such records.

On October 4, 2022, plaintiff filed a second verified complaint and order to show cause. He alleged his requests were valid and should have been granted pursuant to OPRA and the CLRA. The OSC moved to dismiss plaintiff's complaint.

The trial court issued a detailed written opinion, finding OPRA's exception regarding an on-going investigation applied to preclude production of the requested records, and, even without the exception, the requests were impermissibly overbroad. The trial court also found plaintiff's CLRA claim failed because release of the records was not in the public interest. Accordingly, the court dismissed plaintiff's complaint with prejudice. This appeal followed.

II.

6

On appeal, plaintiff argues the trial court erred: (1) in holding that its requests were overbroad and subject to the ongoing investigation exemption; (2) in failing to review the documents in camera or compelling defendants to produce an index; (3) in ignoring defendants' misuse of the Glomar[1] response; and (4) in its analysis of the common law right of public access.

We apply a plenary standard of review from a trial court's decision to grant a motion to dismiss pursuant to Rule 4:6-2(e). Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011) (citing Sickles v. Cabot Copr., 379 N.J. Super. 100, 106 (App. Div. 2005)). No deference is owed to the trial court's conclusions. Ibid. Similarly, "'[t]he trial court's determinations with respect to the applicability of OPRA are legal conclusions subject to de novo review.'" K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 349 (App. Div. 2011) (quoting O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379 (App. Div. 2009)).

1. The OPRA Request.

---

[1] When an investigating authority gives a "noncommittal response" which neither confirms nor denies the existence of an investigation, it "has come to be known as a Glomar response and had its origin in Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976)." N. Jersey Media Grp., Inc. v. Bergen Cnty. Prosecutor's Off. (BCPO), 447 N.J. Super. 182, 196 (App. Div. 2016).

A-1467-22

"[T]he general purpose of OPRA is to 'maximize public knowledge [of] affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Ciesla v. N.J. Dep't of Health and Senior Servs., 429 N.J. Super. 127, 136-37 (App. Div. 2012) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)). In other words, OPRA seeks "to promote transparency in the operation of government." Paff v. Ocean Cnty. Prosecutor's Off. (Paff III), 235 N.J. 1, 16 (2018) (quoting In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 276 (2017)). As such, OPRA provides that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1. Although OPRA defines "government record" broadly, "this broad definition is tempered by a number of exceptions within OPRA itself." McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 614 (App. Div. 2010).

A. The Ongoing Investigation Exception.

Among these exceptions is the "ongoing investigation" exemption, also known as the "investigation in progress" exemption. N.J.S.A. 47:1A-3. This exception requires a public agency to show: (1) the requested records "pertain to an investigation in progress by any public agency[;]" (2) disclosure will "be

inimical to the public interest[;]" and (3) the records were not available to the public before the investigation began. N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 573 (2017) (quoting N.J.S.A. 47:1A-3(a)).

The trial court correctly determined the records were covered by the ongoing investigation exemption because defendants proved all three prongs of N.J.S.A. 47:1A-3(a). Prong one requires the records sought "pertain to an investigation in progress by any public agency[,]" a standard met by the OSC's probe into the effectiveness of the Police Accountability Project. N.J.S.A. 47:1A-3(a). The OSC announced this project to "examine how New Jersey [police] departments are 'detecting and addressing inappropriate officer conduct,' whether their training programs meet [S]tate mandates and how they are fulfilling their obligation to publicly disclose data and documents."

Prong two, requiring disclosure of the records to be "inimical to the public interest . . . calls for 'a fact-specific analysis . . . .'" Paff III, 235 N.J. at 25 (quoting Lyndhurst, 229 N.J. at 576). The trial court correctly found the release of OSC's subpoenas and any other documents relating to its investigation of police departments as part of the Police Accountability Project "would severely undermine OSC's investigative powers and prerogatives to force it to open its investigative playbook to a private vendor presently under investigation."

9

Further, it would be "incongruous and inimical to the public interest embodied in the agency's mission of executive branch accountability . . . ."

N.J.S.A. 52:15C-14(c) demonstrates the Legislature's disfavor of disclosure of any record which would "throw[] open OSC's 'playbook' . . . ." It provides the OSC shall comply with an OPRA request of

> access to a government record that the [OSC] . . . obtained from another public agency [in the course of an investigation] . . . provided that the request does not in any way identify the record sought by means of a reference to the [OSC's] audit or review or to an investigation by the State Inspector General or any other public agency, including, but not limited to, a reference to a subpoena issued pursuant to such investigation.

This Legislative mandate shields from public access any record which would reference an investigation by the public agency charged with executive branch accountability and supports the trial court's finding that prong two was satisfied. Disclosing the means of investigating police departments for misconduct and compliance with criminal justice reforms would severely hamper progress in a major public project and supports a finding that disclosure of these records would be "inimical to the public interest." N.J.S.A. 47:1A-3(a).

The final prong requires that the documents sought had not been previously available to the public before the investigation began. This prong is

also satisfied because, at the time of plaintiff's request, all the requests related to internal documents created in connection with the Police Accountability Project, such as subpoenas and correspondence between defendants and the targets of potential investigations. These records were created as part of an investigation into the internal practices of various New Jersey law enforcement agencies and any subpoenas or correspondences would not have existed prior to the launching of the investigation.

### B. Overbroad and Improper Requests.

When records sought are not subject to an exception, "agencies are only obligated to disclose identifiable government records." Burke v. Brandes, 429 N.J. Super. 169, 174 (App. Div. 2012). "A proper request 'must identify with reasonable clarity those documents that are desired.'" Ibid. (quoting Bent v. Twp. of Stafford Police Dep't, 381 N.J. Super. 30, 37 (App. Div. 2005)). "'Wholesale requests for general information to be analyzed, collated and compiled' by the agency are outside OPRA's scope." Ibid. (quoting MAG Ent., LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 549 (App. Div. 2005)). "OPRA does not countenance open-ended searches of an agency's files" and is not "intended as a research tool litigants may use to force government

A-1467-22

officials to identify and siphon useful information." MAG Ent., 375 N.J. Super. at 546.

As such, requests for "any and all documents" on a subject are generally considered "overly broad." Spectraserv, Inc. v. Middlesex Cnty. Utils. Auth., 416 N.J. Super. 565, 578 (App. Div. 2010). A custodian may reject a request that is overly broad or vague and prevent identification of the records sought. N.J. Builders Ass'n v. N.J. Council on Affordable Hous., 390 N.J. Super. 166, 181-82 (App. Div. 2007). OPRA does not require a custodian to "conduct research among its records . . . and correlate data from various government records in the custodian's possession." Lagerkvist v. Off. of Governor of State, 443 N.J. Super. 230, 237 (App. Div. 2015) (quoting MAG Ent., 375 N.J. Super. at 546-47). OPRA allows access to records, not information.

We agree with the trial court that all five of plaintiff's requests are overbroad requests for information, not records. Plaintiff requested all "[s]ubpoenas issued by the Police Accountability Project . . . or . . . Schuster [;]"[2] "all subpoenas issued by the [OSC] to a private vendor since the creation of the [OSC];" all documents relating to the project from 2021 until present; and

_____

[2] The OSC hired Jane Schuster as a Senior Advisor, "with experience with police oversight, to lead the new 'police accountability project.'"

A-1467-22

all correspondence relating to the project. These types of "[w]holesale requests for general information to be analyzed, collated and compiled" are "outside OPRA's scope." Burke, 429 N.J. Super. at 174 (quoting MAG Ent., 375 N.J. Super. at 549); see also N.J. Builders Ass'n, 390 N.J. Super. at 172 (denying a request as overbroad when the requestor sought "[a]ny and all documents and data which [were] relied upon, considered, reviewed, or otherwise utilized by any employee or staff member") (alterations in original).

The trial court correctly denied plaintiff's request as "overbroad and improper" because he sought "the entire scope of the investigation that may relate to his company, and the inquiry would compel [d]efendants to research and identify those records sent by . . . [Schuster] or others in furtherance of that investigation."

## C. The Glomar Response and Vaughn Index.

Plaintiff urges us to review the applicability of a Glomar response to OPRA requests. However, we have previously addressed this issue and whether a Vaughn index is always required. In BCPO, we concluded:

> [T]he obligation imposed upon the custodian of public records is to "promptly comply with a request" or, if "unable to comply," to "indicate the specific basis therefor on the request form and promptly return it to the requestor." N.J.S.A. 47:1A-5(g); see also Gannett N.J. Partners[, LP v. Cnty. of Middlesex, 379 N.J.

Super. 205, 215 (App. Div. 2005)]. Other than providing a "specific basis" for the inability to comply, the statute establishes no inflexible requirements for a non-compliance response. Whether an agency denies access to identified records or declines to confirm or deny responsive records exist, its reply falls within the category of "unable to comply" and is subject to review under that standard. Therefore, we discern no impediment to the availability of a Glomar response under OPRA's plain language.

We also reject the interpretation urged by [the plaintiff] that the submission of a Vaughn index is required in all cases in which the agency does not comply with a request. Neither OPRA nor [the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552-59] calls for the production of a Vaughn index in every case in which access is denied. Although the use of such a log has become customary, courts that have considered this issue have cautioned that the production and review of a Vaughn index is not appropriate in every case.

[BCPO, 447 N.J. Super. at 200-01.]

A public agency may refuse to confirm or deny the existence of records when "its reply falls within the category of 'unable to comply[,]'" as is the case here. Id. at 200. Defendants responded that the "OSC can neither confirm nor deny the existence of records" requested by plaintiff. OSC's use of the Glomar response and failure to prepare a Vaughn index was within its rights and we decline to disturb that response on this appeal.

2. The Common Law Right of Access Request

14

Access to public documents pursuant to the CLRA is broader than OPRA because the CLRA encompasses a more expansive class of documents. However, access is not automatic and, in determining whether a person has a right of access pursuant to the CLRA, the request "must be balanced against the State's interest in preventing disclosure." O'Boyle v. Borough of Longport, 218 N.J. 168, 196 (2014) (quoting Educ. L. Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 302 (2009) (quoting Higg-A-Rella, Inc. v. Cnty. of Essex, 141 N.J. 35, 46 (1995))). "In other words, [parties] requesting documents must explain why [they] seek[] access to the requested documents." Ibid.

To determine whether the CLRA applies, a court must follow a three-step test. Ibid. "First, it must determine whether the documents in question are 'public records.'" Ibid. (quoting Atl. City Convention Ctr. Auth. v. S. Jersey Publ'g Co., 135 N.J. 53, 59 (1994)). "Second, [parties] seeking disclosure must show that [they have] an interest in the public record." O'Boyle, 218 N.J. at 196 (citing Educ. L. Ctr., 198 N.J. at 302). "The requisite interest necessary to accord a plaintiff standing to obtain copies of public records may be either a wholesome public interest or a legitimate private interest." Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, Div. of L., 421 N.J. Super. 489, 499 (App. Div. 2011) (quoting Educ. L. Ctr., 198 N.J. at 302 (quoting Higg-A-

15

Rella, Inc. v. County of Essex, 141 N.J. 35, 47 (1995))). Third, "once the plaintiff's interest in the public record has been established, the burden shifts to the public entity to establish that its need for non-disclosure outweighs the plaintiff's need for disclosure." O'Boyle, 218 N.J. at 197. "'To gain access to this broader class of materials, the requestor must make a greater showing than OPRA requires, "namely," (1) the person seeking access must establish an interest in the subject matter of the material; and (2) the citizen's right to access must be balanced against the State's interest in preventing disclosure.'" Gannett, 254 N.J. at 257 (quoting Lyndhurst, 229 N.J. at 578 (quoting Mason, 196 N.J. at 67-68)).

It is only at that point of the analysis that courts will apply six factors in balancing the parties' respective interests in disclosure and non-disclosure:

> (1) [T]he extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decision[-]making will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or

16

investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

[Educ. L. Ctr., 198 N.J. at 303 (citing Loigman v. Kimmelman, 102 N.J. 98, 113 (1986)).]

Initially, we reject plaintiff's argument that the trial court's failure "to conduct an in-camera review made it impossible . . . to conduct a proper common law right of public access analysis." Plaintiff's reliance on Rosenberg, which states "[a] trial judge [is required] . . . to 'examine each document individually and make factual findings with regard to why [a plaintiff's] interest in disclosure is or is not outweighed by [the State's] interest in nondisclosure," see Rosenberg v. State Department of Law and Public Safety, 396 N.J. Super. 565, 580 (App. Div. 2007) (quoting Keddie v. Rutgers, State University, 148 N.J. 36, 54 (1997)), is misplaced. Our Supreme Court rejected this contention in Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 149 (2022) ("As part of [the Loigman] analysis, we do not require judges to review actual [documents] in every case. A preliminary review of the relevant factors may suffice in individual cases.") (internal citations omitted); S. Jersey Publ'g Co. v. N.J. Expressway Auth., 124 N.J. 478, 499 (1991) (remanding the case to "determine if disclosure of [the relevant documents] is warranted" before deciding whether "to conduct an in-camera review . . . to ascertain whether redaction is

necessary"). Thus, a trial court is not required to make an in-camera inspection of every document in every case to determine whether the CLRA applies.

For purposes of its motion to dismiss, the OSC conceded the requested documents constituted "public records." However, plaintiff cannot show either a wholesome public interest or a legitimate private interest in the documents, and, therefore, fails to satisfy the second prong of the three-part test. The Police Accountability Project is aimed at observing police reforms of departments themselves, not an investigation into the companies providing these services. Finally, the possible prejudice to the OSC's investigation is an interest that outweighs any interest plaintiff has in obtaining the requested documents.

In reviewing the trial court's analysis of the Loigman factors, "[i]f there is a basis in the record to do so, [the reviewing court] must generally defer to the trial judge's determination" whether there is a common law right of access. Rosenberg, 396 N.J. Super. at 580 (quoting Shuttleworth v. City of Camden, 258 N.J. Super. 573, 588 (App. Div. 1992)); see also Hammock v. Hoffman-LaRoche, Inc., 142 N.J. 356, 380 (1995) (explaining that "[t]he questions whether to seal or unseal documents are addressed to the trial court's discretion").

A-1467-22

The trial court found factors one and two for defendants, citing the chilling effect disclosure would have on the future willingness of vendors to comply with requests for information about their training practices. Courts afford great weight to this chilling effect. See Wilson, 404 N.J. Super. at 584 ("Confidentiality serves to protect government sources of information, and disclosure of confidential emails between the [executive branch] and a union leader . . . would tend to have a 'chilling effect.'"). When the requestor has a weak interest in obtaining the documents, this chilling effect controls. Ibid. ("Balancing the competing interests, [the plaintiff's] limited interest in obtaining the documents pales against the public's strong need for confidentiality essential to the Governor's responsibilities.").

The trial court also found factors three and four weighed against disclosure because "such may affect OSC's decision making in how the investigation will proceed." As we have discussed, the revelation of the procedures OSC employs to conduct its investigations would seriously hamper its ability to conduct those investigations. See N.J.S.A. 52:15C-14(c). The decisions and deliberative processes conducted by the OSC in deciding which vendors to subpoena and investigate, if any, go to the heart of these factors.

Factors five and six are not applicable to this specific controversy. Thus, plaintiff cannot demonstrate he is entitled to access under the CLRA.

In sum, we affirm the trial court's findings that the requested records were subject to OPRA's ongoing investigation exemption at the time OSC responded to the requests, which prevented their disclosure. Even if the exception did not apply, plaintiff requests were overly broad. Plaintiff has failed to demonstrate he is entitled to the records pursuant to OPRA. Likewise, plaintiff's CLRA claims fail because he is unable to demonstrate a particularized need for the records, and pursuant to a balancing of the interests, OSC's interest in being able to conduct its statutory investigations outweighs any interest plaintiff may have in the records.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1467-22