**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1810-16T3

PORT AUTHORITY POLICE
BENEVOLENT ASSOCIATION, INC.
and PAUL NUNZIATO,

     Plaintiffs-Appellants,

v.

PORT AUTHORITY OF NEW YORK
AND NEW JERSEY; WILLIAM
SHALEWITZ, in his official capacity
as Freedom of Information
Administrator for the Port
Authority of New York and New
Jersey; KAREN EASTMAN, in her
official capacity as Secretary
for the Port Authority of
New York and New Jersey,

     Defendants-Respondents.

_____

Argued May 2, 2018 – Decided December 20, 2018

Before Judges Fuentes, Koblitz and Suter.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5789-16.

Jeffrey D. Catrambone argued the cause for appellants (Sciarra & Catrambone, LLC, attorneys; Jeffrey D. Catrambone, of counsel and on the brief).

Thomas R. Brophy argued the cause for respondents (Port Authority Law Department, attorneys; Thomas R. Brophy and Sajaa S. Ahmed, of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Plaintiffs, the Port Authority Police Benevolent Association, Inc., and Paul Nunziato, filed a Verified Complaint against defendants, the Port Authority of New York and New Jersey, William Shalewitz, and Karen Eastman, seeking a response to fifty-eight requests for government records pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. Defendants provided responses to six requests, requested more time to respond to fourteen other requests, and denied the remaining thirty-eight requests as overbroad. The trial court ordered defendants to produce records pertaining to the fourteen requests, and granted plaintiffs' application for an award of counsel fees under N.J.S.A. 47:1A-6. The court limited the scope of the award to fees incurred seeking access to these fourteen requests.

In this appeal, plaintiffs argue the court erred when it: (1) found the records in counts 1-36, 52, and 58 are not subject to disclosure under OPRA; (2)

2

held defendants are not required to produce the records plaintiffs identified in their motion for reconsideration; (3) determined the lodestar amount for counsel fees plaintiffs are entitled to receive as a prevailing party; and (4) denied plaintiffs' counsel's application for a fee enhancement. Defendants argue the trial court correctly determined that thirty-eight requests for records filed by plaintiffs were overbroad. With respect to the award of counsel fees, defendants argue the court correctly determined plaintiffs are not entitled to a fee enhancement.

We conclude the court erred in denying plaintiffs' requests 27-29, 31-34, 36, 52 and 58 and affirm the court's decision to deny the remaining requests as overbroad. We thus remand the matter for the court to reconsider plaintiffs' award of counsel fees under N.J.S.A. 47:1A-6.

I

The dispute before us derives from a ruling the trial court made on May 17, 2016. Based on this ruling, on June 14, 2016, plaintiffs submitted to defendants an amended list of fifty-nine OPRA requests for documents. Defendants responded to only one of these requests. On August 9, 2016, plaintiffs filed a Verified Complaint against defendants containing fifty-two counts; each count identified a request for documents that defendant allegedly

denied in violation of OPRA. Ten days later, plaintiffs filed an Amended Verified Complaint, adding six additional counts, for a total of fifty-eight OPRA requests. Plaintiffs generated this list of fifty-eight requests during the litigation.[1] In a certification submitted to the Law Division as part of defendants' responsive pleading, defense counsel separated the objections to plaintiffs' requests into four categories: (1) overbroad requests; (2) missing criteria requests; (3) completed requests and; (4) open requests. Defendants categorized thirty-eight requests as "overbroad" or "missing criteria," six as "completed," and fourteen as "open."

After hearing counsels' arguments, the trial judge issued an oral and written decision on October 12, 2016. As a threshold matter, the judge found the parties did not dispute "that the records that are being requested are government records [as defined in N.J.S.A. 47:1A-1.1]. So they fall within the ambit of OPRA." It is equally undisputed that defendants are "not claiming . . .

---

[1] In their appellate brief, defendants included a footnote requesting that this court refrain from referring to the list because "it was never provided to [them]." This request is inappropriate. The proper method for raising issues concerning the content of a party's brief or appendix is via motion practice pursuant to Rule 2:8-1.

any of the statutory exemptions."[2]  Against the backdrop of these undisputed issues, the judge made the following additional findings:

> (a)   Defendants have provided responsive records to six (6) requests (counts 37, 40, 44, 45, 49, 50)
>
> (b)   Defendants have denied thirty-eight (38) requests in their entirety (counts 1-36, 52, 58)
>
> (c)   Defendants have acknowledged receipt and have provided an expected response date for fourteen (14) requests (counts 38-39, 41-43, 46-48, 51, 53-57).

The judge provided the following explanation for upholding defendants' decision to deny the thirty-eight requests:

> Plaintiffs' requests are overbroad and invalid under OPRA as they fail to properly identify the records being sought.  The language used in the majority of the requests does not specifically and with reasonable clarity identify the records sought.  Those requests that have properly identified the records being sought, have been granted.

The judge also found the requests imposed "a burden on the custodian to exercise his discretion and discern the broad 'catch-all' language in order to respond to [d]efendants' requests."  By imposing this burden on the custodian of records, the judge found plaintiffs' requests fell outside the scope of OPRA.  The

---

2 OPRA has twenty-one statutory exemptions to the term "government record," as defined in N.J.S.A. 47:1A-1.1, which are to be "'construed in favor of the public's right of access.'"  Carter v. Doe (In re N.J. Firemen's Ass'n Obligation), 230 N.J. 258, 276 (2017) (quoting N.J.S.A. 47:1A-1).

judge also found that many of plaintiffs' requests contained "boilerplate prefatory language" that requires "the custodian to analyze, collate, compile and exercise discretion," which is not encompassed within OPRA. The judge concluded these requests are overbroad because they would require the custodian to conduct open-ended searches.

The judge also found the current requests were strikingly similar to the previously denied requests. She found that in an attempt to camouflage the current requests, plaintiffs had merely "broken into subparts" the requests. In the judge's view, this maneuver did not cure the original problem. Plaintiffs' requests "remain vague requests for information that would require [d]efendants to exercise discretion as to which documents are responsive [and which] are invalid under OPRA." In this light, the judge considered defendants' delay in responding to the requests reasonable because timely responses would have disrupted agency operations. Because she found defendants' responses were lawful and appropriate, the judge denied plaintiffs' application for counsel fees as a prevailing requestor. See N.J.S.A. 47:1A-6.

On November 1, 2016, plaintiffs filed a notice of motion for partial reconsideration with respect to the trial court's denial of access to records for requests: 27-34, 36, 52 and 58. Plaintiffs also filed a motion seeking $36,196.88

in attorney's fees. On December 16, 2016, the trial court denied the motion for reconsideration and awarded plaintiffs $5,400 in attorney's fees. In support of its award of counsel fees, the trial court found plaintiffs were "a partially prevailing party" as to counts 38, 39, 41-43, 46-48, 51 and 53-57, but found the hours billed by plaintiffs' counsel were "excessive and unreasonable" because the "fee application includes the entirety of time spent and is not limited to plaintiffs' successes." The court applied the percentage of successful requests to the total hours billed to reach the lodestar amount of $5,400. In this appeal, plaintiffs challenge the orders entered on October 12, 2016 and December 16, 2016.

Plaintiffs argue the records in requests 1-36, 52 and 58 are subject to disclosure under OPRA because the requests are similar to those deemed valid under Burke v. Brandes, 429 N.J. Super. 169 (App. Div. 2012) and Burnett v. Cty. of Gloucester, 415 N.J. Super. 506 (App. Div. 2010). Plaintiffs maintain the requests were made with "reasonable clarity" and listed "identifiable records." Plaintiffs emphasize these requests merely required defendants to "search" for documents, not to "conduct research."

Plaintiffs specifically point to four categories of requests the trial court found inappropriate and outside OPRA's reach: "records of meetings . . . and

communications," "contracts and agreements," "emails and written communications" and "application for grants, assistance, loan guarantees or reimbursement of expenses to government agencies." Plaintiffs argue these categories "specifically identify" certain records and are not "overly-broad" or "open-ended."

Plaintiffs also address the eleven requests that were the subject of the motion for reconsideration, which, in their judgment, were "narrowly-tailored" and listed "specifically identifiable governmental records." According to plaintiffs, these requests concern records that "contain a date range, subject matter, and identity of the sender and/or recipient," which is "sufficient under OPRA." Consequently, plaintiffs claim they are all subject to disclosure under OPRA.

Finally, with respect to the award of counsel fees, plaintiffs argue the court improperly reduced the lodestar amount by "arbitrarily reducing the attorney hours by 76% and awarding a lower hourly rate, and improperly did not award a fee enhancement." Plaintiffs contend the trial court arrived at the lodestar by improperly using a rigid proportionality requirement.

In response, defendants argue plaintiffs' 4,000 word, seventy-eight page complaint is overbroad and encompasses a type of record request not envisioned

8

by the Legislature when it enacted OPRA. According to defendants, all of the requests, and especially requests 1-22, are "deficient" because they seek "records of meetings" between several individuals over a five-year period, without identifying specific senders and recipients. Defendants argue that requests 2, 6, 8, 9, 13, 16, 17 and 23 seek "phone logs, telephone billing records, or cellular phone/text billing records concerning a variety of different subject matter." This would require defendants' custodian of government records to interview "thousands of individuals" to determine which of their billing records corresponded to the appropriate subject matter. Finally, defendants argue that requests 5, 6, 7, 9, 10, 11, 12, 27, 29, 31 and 32 lack subject matters that can be easily searched and are thus outside the purview of OPRA.

Defendants urge this court to uphold the trial court's decision regarding the amount of counsel fees awarded to plaintiffs. They argue plaintiffs should only be awarded fees directly related to the "narrow portion of its case where it prevailed – not to a windfall amount for its unsuccessful requests." According to defendants, this situation did not require an upward adjustment of the lodestar, and plaintiffs' request for $36,000 was unreasonable.

A-1810-16T3

II

This court reviews "de novo the issue of whether access to public records under OPRA and the manner of its effectuation are warranted." MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 543 (App. Div. 2005) (emphasis omitted). The purpose of OPRA, N.J.S.A. 47:1A-1 to -13, is "to insure that government records, unless exempted, are readily accessible to citizens of New Jersey for the protection of the public interest." Mason v. City of Hoboken, 196 N.J. 51, 57 (2008) (citing N.J.S.A. 47:1A-1). When it adopted OPRA, the Legislature codified New Jersey's "longstanding public policy favoring ready access to most public records." Serrano v. S. Brunswick Twp., 358 N.J. Super. 352, 363 (App. Div. 2003). OPRA establishes a framework for public records access and generally requires prompt disclosure of records; it also provides record seekers a way to challenge a custodian's decision denying access. Ibid.

Under OPRA, "government record" is defined as follows:

> [A]ny paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any

political subdivision thereof, including subordinate boards thereof, or that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof, including subordinate boards thereof. The terms shall not include inter-agency or intra-agency advisory, consultative, or deliberative material.

[N.J.S.A. 47:1A-1.1.]

Absent an applicable exclusion or exemption to prevent disclosure, "all government records shall be subject to public access[.]" N.J.S.A. 47:1A-1. Therefore, OPRA mandates public access to government records unless the records are covered by a specific exclusion. Ibid. A records custodian must grant or deny access to a government record "as soon as possible, but not later than seven business days after receiving the request," and a failure to respond within this time "shall be deemed a denial of the request." N.J.S.A. 47:1A-5(i). If the agency believes it cannot provide a timely response, the custodian must convey that information to the record seeker within seven business days and advise when the record will be made available. Ibid.

If a records request is denied, the requestor may challenge the decision by filing an action in the Superior Court or through a complaint with the Government Records Council. N.J.S.A. 47:1A-6. When access is denied, the burden is placed on the agency to prove the denial was authorized by law. Ibid.

When assessing the agency's evidence for denying access, "a court must be guided by the overarching public policy in favor of a citizen's right of access." Courier News v. Hunterdon Cty. Prosecutor's Office, 358 N.J. Super. 373, 383 (App. Div. 2003). If the court determines that the agency erred in denying access, the court will order access to the records, and the prevailing party shall be entitled to reasonable attorney's fees. N.J.S.A. 47:1A-6.

Under N.J.S.A. 47:1A-5(g), if "the custodian is unable to comply with a request for access, the custodian shall indicate the specific basis therefor on the request form and promptly return it to the requestor." One such basis is an overly broad request, as New Jersey courts have stated OPRA governs "requests for records, not for information." Burke, 429 N.J. Super. at 174 (quoting Bent v. Twp. of Stafford Police Dep't, 381 N.J. Super. 30, 37 (App. Div. 2005)). In Burke, we explained the type of requests that may be viewed as overly broad and thus beyond the scope of OPRA:

> "[A]gencies are only obligated to disclose identifiable government records." MAG Entm't, 375 N.J. Super. at 549. The statute "only allows requests for records, not requests for information." Bent, 381 N.J. Super. at 37. A proper request "must identify with reasonable clarity those documents that are desired." Ibid. "Wholesale requests for general information to be analyzed, collated and compiled" by the agency are outside OPRA's scope. MAG Entm't, 375 N.J. Super. at 549. "In short, OPRA does not countenance open-ended

A-1810-16T3

searches of an agency's files." Ibid.; see also Spectraserv, Inc. v. Middlesex Cnty. Utils. Auth., 416 N.J. Super. 565, 576 (App. Div. 2010).

Nor is OPRA "intended as a research tool litigants may use to force government officials to identify and siphon useful information." MAG Entm't, 375 N.J. Super. at 546. Furthermore, if a request "would substantially disrupt agency operations, the custodian may deny access to the record after attempting to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency." N.J.S.A. 47:1A-5(g).

[Burke, 429 N.J. Super. at 174.]

The salient facts in Burke provide a concrete example of how to determine whether a request is overly broad. The plaintiff in Burke sought records from the Office of the Governor regarding "E[-]Z pass benefits afforded to retirees of the Port Authority, including all . . . correspondence between the Office of the Governor . . . and the Port Authority . . . ." Id. at 171. The custodian of records from the Office of the Governor denied this request on the basis that it was overbroad. Ibid. The trial court upheld the custodian's denial on this basis. We reversed because the request "was confined to a specific subject matter that was clearly and reasonably described with sufficient identifying information, namely, E-Z Pass benefits provided to Port Authority retirees." Id. at 176. The request was also limited to "particularized identifiable government records . . .

13

rather than information generally," and "did not require the custodian to conduct research, or to collect, collate and analyze data." Id. at 176-77. We particularly noted that because plaintiff's request:

> . . . described the records sought with the requisite specificity and narrowed the scope of the inquiry to a discrete and limited subject matter, we conclude his request was neither vague nor overbroad. The request sought the records themselves, not data, information or statistics to be extracted, gleaned or otherwise derived therefrom. Involving no research or analysis, but only a search for, and production of, what proved to be readily identifiable records, plaintiff's properly circumscribed and tailored request was wrongly invalidated as overbroad.
>
> [Id. at 177-78.]

We described the features of an inappropriate OPRA request in Bent, 381 N.J. Super. 30. The plaintiff in Bent requested his entire criminal file from an investigation jointly conducted by the Stafford Township Police Department, the United States Attorney for New Jersey, and the Internal Revenue Service. Id. at 33-34. He also requested "the factual basis underlying documented action and advice to third parties to act against my interest [having] been credited to SPD under a Federal Grand Jury credit card investigation." Ibid. We deemed his request improper under OPRA because he did not request specific documents and instead "sought the custodian's response to his allegation of police

14

misconduct, borne of his belief that certain unidentified and unnamed documents on file with the township were wrongfully concealed or withheld from him." Id. at 39. We held an agency is not obligated to respond to a request seeking "general information" and framed as an "open-ended demand requir[ing] analysis and evaluation . . . [.]" Id. at 39-40.

Similarly, in MAG Entm't, this court denied the plaintiff's request for "'all documents or records evidencing that the [Division of Alcoholic Beverage Control] [(ABC)] sought, obtained or ordered'": (1) "'revocation of a liquor license for the charge of selling alcoholic beverages to an intoxicated person in which such person, after leaving the licensed premises, was involved in a fatal auto accident'"; and (2) "'suspension of a liquor license exceeding 45 days for charges of lewd or immoral activity.'" 375 N.J. Super. at 539-40. The plaintiff did not provide names or any other identifiers in the request and the records custodian was "required to evaluate, sort out, and determine the documents to be produced and those otherwise exempted." Id. at 549. This court concluded the request was "a broad-based demand for research and analysis, decidedly outside the statutory ambit." Id. at 550.

In N.J. Builders Ass'n v. N.J. Council on Affordable Hous., 390 N.J. Super. 166 (App. Div. 2007), the plaintiff submitted thirty-eight requests under

15

OPRA that sought documents and data "'used' or 'considered' by COAH or 'support[ing],' 'demonstrat[ing],' 'justif[ying]' or 'verif[ying]' various determinations relevant to COAH's determinations about fair-share housing obligations" including "[a]ny and all documents and data which [were] relied upon, considered, reviewed or otherwise utilized" by any individual at COAH for an affordable housing project. Id. at 172. We denied the plaintiff's request on similar grounds. Consistent with the approach we employed in Bent and MAG Entm't, we stated that the "five-page, thirty-nine paragraph request bears no resemblance to the record request envisioned by the Legislature" as it "required a survey of employees . . . before any attempt to compile the documents and data[.]" Id. at 178. It concluded that the plaintiff "asked COAH to identify the documents, which is [the plaintiff's] obligation under OPRA." Ibid.

In contrast, in Burnett, 415 N.J. Super. at 508, we granted an OPRA request from the County of Gloucester of "[a]ny and all settlements, releases or similar documents entered into, approved or accepted from 1/1/2006 to present." In Burnett, our colleague Judge Payne explained "the fact that [the plaintiff] requested settlement agreements and releases without specifying the matters to which the settlements pertained did not render his request a general request for

16                                                                                    A-1810-16T3

information obtained through research, rather than a request for a specific record." Id. at 513-14. Judge Payne clearly identified the key analytical distinction by noting that "it is the documents, themselves, that have been requested, and their retrieval requires a search, not research." Id. at 516.

Here, the trial court's order required defendants to supply plaintiffs with requests 38, 39, 41-43, 46-48, 51 and 53-57. Defendants originally provided responses only to 37, 40, 44, 45, 49 and 50. We affirm the trial judge's decision in this respect. The judge correctly denied plaintiffs' requests 1 to 36, 52, and 58 in the original order, and in the order denying plaintiffs' motion for reconsideration. This appeal only addresses the above thirty-eight denied requests. The trial judge did not provide analysis on each individual request and instead examined them as a whole, occasionally focusing on the language of specific requests. Each of the requests should have been considered a separate OPRA request.

### III

Requests 1, 3, 5, 7, 14, 18, 19, 22 and 23 begin with the following language: "Records of meetings (defined as physical or digital calendars, minutes or notes taken during such meeting by any participant(s), or memoranda summarizing such meeting and/or actions to be taken as a result of such

meeting)." Requests 1 and 3 seek records, as defined above: "sent by, received by or participated in" by named employees of the Port Authority and "<u>any</u> Port Authority Commissioner, officer or other employee(s), outside contractor(s) or <u>any non-Port Authority personnel</u>, concerning the provision of Aircraft Rescue Fire Fighting . . . services at Port Authority operated facilities" from as early as 2009. (Emphasis added). Although plaintiffs provide a subject matter, albeit a broad one, the request seeks records of meetings between the named individuals and <u>any</u> Port Authority or non-Port Authority personnel. This is potentially an excessively large number of people. It is also unclear how defendants can be considered custodians of documents in the possession of "non-Port Authority personnel." These requests would require the records custodian to interpret the meaning of "concerning the provision of Aircraft Rescue Fire Fighting . . . services." Plaintiffs do not define the term "concerning," rendering these requests akin to requests for "information generally," rather than specific, identifiable records. <u>See</u> <u>Burke</u>, 429 N.J. Super. at 176-77. These types of requests for documents are not easily searchable by the records custodian and leave unclear how the custodian is expected to discern what "actions . . . [were] taken as a result of such meeting[s]."

18

Requests 5 and 7 reflect similar flaws. Request 5 seeks records of meetings "sent by, received by or participated in" by a named individual and "any employee of the Federal Aviation Administration between January 1, 2009 and the date of this request." Requests 7 seeks records of meetings "sent by, received by or participated in" by a named individual and "any employee or member of the Congress of the United States of America, including any member of the House of Representatives, Senator, staff member of any staff of an individual member of Congress or any staff member of any Congressional committee between January 1, 2009 and the date of this request." Neither of these requests contains a specific subject matter, and both potentially encompass a massive number of individuals and documents. Requests 5 and 7 thus fall outside the scope of OPRA. N.J. Builders Ass'n, 390 N.J. Super. at 178.

Requests 14, 18, 19 and 22 do not include a date restriction. Request 14 seeks records of meetings "participated in by David Garten and any Port Authority Commissioner, officer or employee, concerning David Garten's employment with the Port Authority[.]" (Emphasis added). These records cannot be obtained through a reasonable search because they are framed as a "broad-based demand for research and analysis." MAG Entm't, 375 N.J. Super. at 550. Requests 18 and 19 seek records of meetings involving a named

A-1810-16T3

individual and <u>any personnel or non-personnel</u> of the Port Authority, as well as any individual associated with "Legends Hospitality LLC concerning" agreements reached with Legends Hospitality LLC dating back to 2011. These requests contain defects similar to requests 1 and 3 in that they encompass such a large swath of individuals; they also use the ambiguous "concerning" language, which would require the custodian to search and analyze other possibly relevant documents to discern what documents may be within the scope of plaintiffs' request. Although the request for the "agreements reached with Legends Hospitality LLC" would be appropriate, requesting records of meetings "concerning negotiations with, proposals made by or to or agreements reached with Legends Hospitality LLC" imposes an obligation on the custodian not sanctioned by OPRA.

In request 22, plaintiffs seek records of meetings "sent by, received by or participated in" by three named individuals and any Port Authority personnel and non-personnel "concerning the construction, financing, leasing, or operation of Tower 3 of the World Trade Center between January 1, 2009 and the date of this request." This request is even broader than the previous requests because it individually names three people instead of one while also including the "concerning" language accompanied by a similarly broad subject matter. In

sum, all of plaintiffs' requests for records of meetings (requests 1, 3, 5, 7, 14, 18, 19 and 22) are overbroad, ambiguous, and impose an impermissible burden on the custodian of records. Unlike the plaintiff's request in <u>Burke</u> for "particularized identifiable government records . . . rather than information generally," plaintiffs' requests here would "require the custodian to conduct research, or to collect, collate and analyze data." <u>Burke</u>, 429 N.J. Super. at 176-77. Plaintiffs' requests are also distinguishable from those of the plaintiff's in <u>Burnett</u> because there, the court found, "it is the documents, themselves, that have been requested." <u>Burnett</u>, 415 N.J. Super. at 516. Here, plaintiffs' requests require research, more than just a search, making them materially different from the requests in <u>Burnett</u>. <u>Ibid.</u> For these reasons, we affirm the trial court's decision denying these requests.

IV

Requests 2, 6, 8, 9, 13, 16 and 17 begin with the following language: "Records of communications (defined as phone logs, telephone billing records, or cellular phone/text billing records)." Requests 2 and 8 seek records of communication "sent by, received by or participated in" by a named individual, <u>any</u> Port Authority personnel and "<u>any non-Port Authority personnel</u>, concerning the provision of Aircraft Rescue Fire Fighting . . . services at Port

21

Authority operated facilities" as early as 2009. (Emphasis added). These requests seek "phone logs, telephone billing records, or cellular phone/text billing records" "concerning" a specific subject matter, without identifying the number of possible individuals who fall within its scope. They leave unclear how the records custodian would be able to discern whether a log or record "concerned" a specific subject matter. The custodian would also be unable to discern this information by identifying the individuals involved in the records or the dates of the records. These requests would require the custodian to perform an unspecified number of interviews with the named individuals, which this court has held would "substantially disrupt agency operations." MAG Entm't, 375 N.J. Super. at 546; see also N.J. Builders Ass'n, 390 N.J. Super. at 181.

Requests 13, 16 and 17 are similarly improper under OPRA. Without a date restriction, request 13 seeks records of communications concerning the "retention" of a named individual by the Port Authority "sent by, received by or participated in" by a named individual and any Port Authority employee. The lack of a date restriction imposes an impermissible burden on the records custodian to sort through these records without conducting research or interviews to determine what subject matter was discussed during a specific

billing record or phone log. Requests 16 and 17 seek records of communications "sent by, received by or participated in" by a named individual and any Port Authority personnel or non-Port Authority personnel, as well as any individual associated with Legends Hospitality LLC, concerning agreements reached with Legends Hospitality LLC since 2011. This would require the records custodian to produce these records after consulting with potentially dozens of people, both Port Authority employees and non-Port Authority employees, to determine what logs or billing records correspond with the requested subject matter. The trial court thus properly denied all of plaintiffs' requests for these records of communications.

V

Requests 4, 10, 11, 12, 15, 20, 21 and 35 begin with the following language: Communications (defined as: correspondence, memoranda, electronic mail or text message). Request 10 seeks "communications" between a named individual and <u>any</u> member of Congress as well as staff or employees of Congress since 2009. Request 12 seeks "communications" between the same individual and <u>any</u> employee of the Federal Aviation Administration since 2009. These requests contain no subject matter, encompass an exorbitant number of possible individuals, and do not identify particular documents. These are clearly

requests for information, not documents. Request 11 does not contain a date restriction and seeks communications "between David Garten and any Port Authority . . . employee concerning David Garten's employment with the Port Authority . . . ." This is not a request reasonably searchable by the records custodian because it would require the custodian to exercise a significant degree of discretion in deciding what communications "concern" the employment of David Garten. It also is not limited to specific individuals; it seeks communications between Garten and any employee of the Port Authority.

Requests 4 and 15 seek "communications" between separately named individuals, and any Port Authority personnel or non-Port Authority personnel "concerning the provision of Aircraft Rescue Fire Fighting" as early as 2009. Request 35 seeks "communications" between a named individual and any Port Authority personnel or non-Port Authority personnel from 2011 "concerning agreements reached with Legends Hospitality LLC." These requests essentially mirror the ones in Part I of this opinion, except they request "communications" that encompass emails and texts instead of records of meetings. While emails and texts are more easily searchable, these requests lack specificity regarding the number of individuals involved and the subject matter addressed. Again, including "any non-Port Authority personnel" substantially expands the possible

pool of potential individuals involved in these "communications," and the "concerning" language leaves too much discretion to the records custodian to decipher what "records" plaintiffs are actually seeking. With respect to request 35, although OPRA permits a request for specific agreements, request 35 becomes overly broad by seeking all correspondence "concerning" any agreements over a five-year span, without further specificity. This places a substantial, undue burden upon the records custodian because plaintiffs seek information rather than requests for documents.

Requests 20 and 21 are similarly overbroad. Request 21 seeks communications "sent by, received by or participated in" by three separately named individuals and any individual or individuals . . . concerning the construction, financing, leasing, or operation of Tower 3 of the World Trade Center between January 1, 2009 and the date of this request." (Emphasis added). Indeed, this may be the broadest of plaintiffs' requests because other than including the three named individuals, there are no other limiting identifiers on the senders or recipients of the correspondence. Request 21 therefore encompasses all of their correspondence with any individual "concerning the construction . . . of Tower 3 of the World Trade Center" over a seven-year span. This is essentially an "open-ended demand requir[ing] analysis and evaluation

25

which the agency is under no obligation to provide . . . ."  Bent, 381 N.J. Super. at 40.  Request 20, although narrower, is similar to previously discussed improper requests because it seeks communications of a named individual and "any individual . . . employed by or acting as a representative of Legends Hospitality LLC concerning negotiations with, proposals made by or to or agreements reached with Legends Hospitality LLC" within a four year span. Instead of requesting specific agreements regarding specific topics, plaintiffs seek general information "concerning" potentially dozens of agreements within a large span of time.  These types of requests are overbroad under OPRA.

Before we address and discuss the next category of requests, it is necessary to address request 23, which seeks communications, records of communications and records of meetings

> [s]ent by, received by or participated in by the following individuals with any and all officers, staff and/or members of the Board of Commissioners concerning Memoranda of Agreement/Letters of Agreement executed by Paul Nunziato and Patrick Foye on or about May 9, 2013 and released in Port Authority Freedom of Information Request Number 15227 . . . .

Request 23 then lists twenty-two individuals.  We conclude this exemplifies the kind of "[w]holesale request[] for general information" that must be "analyzed, collated and compiled" by defendants, as well as an "open-ended search[] of

A-1810-16T3

[defendants'] files." MAG Entm't, 375 N.J. Super. at 549. This is the type of request that substantially disrupts an agency's operations. "[I]f a request would substantially disrupt agency operations, the custodian may deny it and attempt to reach a reasonable solution that accommodates the interests of the requestor and the agency." MAG Entm't, 375 N.J. Super. at 546 (citing N.J.S.A. 47:1A-5(g)). Although not explicitly defined, "[d]isruption may simply be inferred from the breadth, generality and complexity of the request at issue, which 'necessitates work by [agency] employees that is neither assigned by the agency nor envisioned by OPRA.'" Spectraserv, Inc., 416 N.J. Super. at 579-80 (quoting N.J. Builders Ass'n, 390 N.J. Super. at 181). "A request that . . . demands assessment and preliminary inquiry . . . is sufficient to give rise to an inference that compliance will 'disrupt agency operations.' Disruption may be inferred because a request . . . necessitates work by [the agency] that is neither assigned by the agency nor envisioned by OPRA." N.J. Builders Ass'n, 390 N.J. Super. at 181.

Here, request 23 would require the records custodian to search through correspondence, emails, texts, phone logs, billing records, calendars, minutes and notes of meetings of twenty-two individuals, find the relevant records and respond to plaintiffs within seven business days. Although plaintiffs attempted

to limit the subject matter to records that concern agreements executed by specific people on a specific date, the scope and breadth of the records request still falls outside the purview of OPRA.

VI

Requests 24, 25 and 26 begin with the following language:

> Records Contracts or written agreements governing any period between January 1, 2008 and December 31, 2020 between the Federal Government of the United States of America, including any branch or agency thereof, and the Port Authority providing for financial aid, provision of equipment and/or reimbursement of Port Authority expenses, whether for personnel, outside contractors or equipment, related to the provision of public safety and/or security at Port Authority facilities
> . . . .

Request 25 also seeks contracts between the Port Authority and the State of New York while request 26 seeks contracts between the Port Authority and the State of New Jersey. These requests seek: "records [of] contracts or written agreements" for three different kinds of equipment along with "related equipment and staffing/training," "records [of] contracts or written agreements" for police canines along with "related equipment and staffing/trainings" and "records [of] contracts or written agreements" related to officers assigned to the "Transportation Security Agency," Aircraft Rescue and Firefighting operations, and security for political figures.

28

Similar to the requests we addressed and discussed in Part V of this opinion, these requests would also substantially disrupt agency operations. Although circumscribed to specific subjects, the requests seek records of contracts or agreements between the Port Authority and three different governments encompassing a twelve-year span. These are the type of requests from which disruption may be inferred because of "the breadth, generality and complexity of the request;" that would "necessitate[] work by [agency] employees that is neither assigned by the agency nor envisioned by OPRA." Spectraserv, Inc., 416 N.J. Super. at 579-80 (quoting N.J. Builders Ass'n, 390 N.J. Super. at 181). These requests are also ambiguous because they ask for "Records Contracts or written agreements." This language leaves unclear whether plaintiffs seek the "contracts or written agreements" themselves or whether they seek records of the contracts or written agreements. Plaintiffs could have easily narrowed the request; these broad, complex requests would substantially disrupt agency operations. Under these circumstances, defendants were not required to provide responses to these requests.

VII

We now review the trial court's decision to deny plaintiffs' motion for reconsideration of the ruling that rejected requests 27-34, 36, 52 and 58. The

29

court found these requests were properly denied by defendants because they were overbroad. We conclude the trial judge erred in upholding defendants' denial of requests 29, 31-34 and 58, and affirm the judge's decision to deny request 30.

Requests 33 seeks "written reports and recommendations made by the Chertoff Group to the Port Authority of New York and New Jersey" from 2009. Request 34 seeks "reports, memos, and written and electronic communication[s] generated by the Chertoff Group regarding any candidates who applied for the position of Chief Security Officer issued between January 1, 2012 and December 31, 2012." Both of these requests were proper under OPRA. Request 33 seeks specific identifiable documents in the form of reports generated by the Chertoff Group. The absence of a specific subject matter does "not render [the] request a general request for information obtained through research." Burnett, 415 N.J. Super. at 513-14. Request 34 seeks similar documents, limited to documents generated by the Chertoff Group, and limits the subject matter and period to one year. These records, generated by one sender regarding a specific position, limited to a short time period, should be readily accessible and do not require research on the part of the records custodian.

A-1810-16T3

Request 58 was also improperly denied. In this request plaintiffs seek "applications for grants, assistance, loan guarantees, or reimbursement of expenses submitted by the Port Authority . . . to any level or agency of municipal, state or federal government during the period January 1, 2008 and the date of this request." This is a request for specific identifiable documents that should be accessible to the records custodian. Although request 58 spans a wide range of time, plaintiffs request the documents themselves, not general information. This does not require the custodian to do research or analyze data. It is similar to the requests for contracts, invoices and retainer agreements already turned over by defendants in requests 37-57.

Requests 29, 31 and 32 seek similar types of documents. They all seek "electronic mail" between two specifically named individuals over a one year or two year timespan. Although they do not contain specific subject matter, the requests would not necessarily require the records custodian to conduct research. The custodian can access responsive documents by searching the email accounts of the named individuals and print the correspondence between the two email accounts. Because the requests seek emails for at least a one-year timespan, this could involve a substantial amount of documents. The lack of subject matter is concerning, but since the requests are for readily accessible documents limited

by sender/recipient, they constitute proper access requests under OPRA.  In reaching this conclusion, we are mindful to construe any shortcoming in the request "in favor of the public's right of access."  N.J.S.A. 47:1A-1.

Request 27 seeks "written and email communications from Arlene Grampp regarding asset forfeiture for the time period of January 1, 2010 to January 1, 2016."

Request 28 seeks the same types of communications "from Martin Gleeson regarding Port Authority Police Sergeants' promotions and the Sergeants' Supervisory Development course from October 1st, 2015 through November 17th, 2015."  Request 28 is narrower than request 27 because it limits the documents based on the sender, includes a detailed subject matter, and limits the timespan of communications to approximately one month.  Request 27 contains similar features, but significantly expands the timespan of communications to six years.  However, since these requests are for emails from a specific sender or recipient that can be searched using a subject phrase, they most likely can be electronically identified and retrieved with relative ease.  Absent countervailing evidence showing the requests as framed impose an undue burden on the custodian, we conclude they are both proper requests under OPRA.

Requests 36 and 52 present similar characteristics. Request 36 seeks "written and email communications from Thomas Belfiore, David Garten, or Martin Gleeson containing the terms 'Paul Nunizato', 'PBA,' 'Port Authority PBA', 'Paul' or 'Nunizato' from November 2, 2015 through November 25, 2015." Plaintiffs provided defendants keywords to search, and limited the senders and timespan to less than one month. Request 52 seeks the same communications "from Executive Director Patrick Foye from January 1, 2014 through December 31, 2016 containing the terms or phrases 'PBA', 'Port Authority PBA', 'Paul Nunziato', 'Nunziato', 'O'Brien', 'Michael O'Brien', 'Pope Francis', 'Pope', 'FOI', 'Freedom of Information', or 'OPRA'. Similar to request 36, request 52 is limited to these communications that contain certain search terms. Although the period is larger, this request is reasonably tailored and should have been upheld by the trial court.

We reach a different conclusion with respect to request 30. Because the language used by plaintiffs in this request is far less clear, the trial judge properly held the custodian was not obligated to respond under OPRA. Request 30 seeks "written and email communications and calendars referencing meetings between Dr. Edward Bennett . . . and Lt. Timothy McGovern . . ., Mr. Martin Gleeson . . . and any other Port Authority employees involved in the case

regarding Police Officer Steven Napoli JFK and Byron Miller JFK between August 21, 2014 to the date of this request." This would require the records custodian to determine the communications, including calendars, that reference meetings between three individuals and any other Port Authority employees "involved in the case" regarding two individuals. The custodian would also have to determine what documents plaintiffs are seeking. The trial judge properly upheld the denial of request 30 because it would require the custodian to perform far more than just a search for documents.

## VIII

Finally, we address the amount of counsel fees the trial court awarded related to those requests in which the court found plaintiffs were the prevailing party. The trial judge awarded plaintiffs $5,400 in counsel fees. Plaintiffs argue the judge used an "overly rigid and simplistic mathematical approach" to reduce by seventy-six percent the amount of counsel fees requested. The judge found plaintiffs prevailed with respect to requests 38, 39, 41-43, 46-48, 51, 53-57, and awarded counsel fees incurred in the enforcement of those requests. The judge rejected plaintiffs' application for an award of counsel fees in the amount of $46,196.88, which the judge found was "calculated at an hourly rate of $495.00 for 56.25 hours of work performed plus a 30% lodestar enhancement."

A-1810-16T3

The judge found the number of hours plaintiffs' counsel claimed they devoted litigating the case were "excessive and unreasonable" because: (1) plaintiffs only prevailed in fourteen of the fifty-eight requests; and (2) the issues before the court were not novel. Under this approach, the judge found plaintiffs prevailed to enforce only 24.1% of the total requests and reduced the number of billable hours to 13.5. The judge then multiplied 13.5 by an hourly rate of $400.00 to reach $5,400. The judge also rejected plaintiffs' counsel's request for a lodestar enhancement.

Pursuant to N.J.S.A. 47:1A-6, if "[a] requestor . . . prevails in any proceeding [the requestor] shall be entitled to a reasonable attorney's fee." A requestor is entitled to attorney's fees if there is: (1) "a factual causal nexus between plaintiff's litigation and the relief ultimately achieved"; and (2) "that the relief ultimately secured by plaintiffs had a basis in law." Mason, 196 N.J. at 76 (quoting Singer v. State, 95 N.J. 487, 494 (1984)). We review awards of counsel fees under an abuse of discretion standard. McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007). Determinations regarding counsel fees "will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Ibid. (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

To determine the amount of counsel fees, the court calculates the "lodestar," which is the number of hours reasonably expended by the successful party's counsel, multiplied by a reasonable hourly rate. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009). The court considers the following factors in calculating the "lodestar":

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; [and] (8) whether the fee is fixed or contingent.
>
> [Id. at 387 (citing R.P.C. 1.5(a)).]

The court may reduce the lodestar "if the level of success achieved in the litigation is limited as compared to the relief sought." New Jerseyans for a Death Penalty Moratorium v. New Jersey Dep't of Corr., 185 N.J. 137, 154 (2005) (quoting Rendine v. Pantzer, 141 N.J. 292, 336 (2005)). However, it should not be reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Ibid. (quoting Hensley v. Eckerhart, 461 U.S. 424, 435

(1983)).   Our Supreme Court has also cautioned against employing a "mathematical approach [that compares] the total number of issues in the case with those actually prevailed upon' because such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." New Jerseyans for a Death Penalty Moratorium, 185 N.J. at 154, (internal citations omitted).   The Court also rejected an approach that relies "on percentages of documents obtained to determine whether a reduction of the lodestar is appropriate in OPRA cases."   Id. at 155   Instead, the Court directed trial judges to

> conduct a qualitative analysis that weighs such factors as the number of documents received versus the number of documents requested, and whether the purpose of the OPRA was vindicated by the litigation.  Further . . . the court also should consider the factors enumerated in RPC 1.5(a), which include the novelty of the issue, the time and labor required to conclude the matter, and whether the representation precluded the attorney from undertaking other employment opportunities.  If, after consideration of all the relevant factors, the court concludes that the requester has obtained a high degree of success, the requester should recover the full lodestar amount.
>
> [Ibid. (internal citations omitted).]

Here, plaintiffs argue the trial judge's reliance on a mathematical formula to determine plaintiffs' degree of success, and thereafter apply the ratio produced

by this exercise to determine the amount of counsel fee plaintiffs' are entitled to receive as a prevailing party, is precisely the approach the Supreme Court rejected in New Jerseyans for a Death Penalty Moratorium. We disagree. The trial judge carefully analyzed plaintiffs' fee application and concluded it improperly contained time spent on items that were found outside the scope of OPRA. The judge also considered the fact that the parties had previously litigated almost identical requests and "[m]any of plaintiffs' submissions were identical to those in previous pleadings and briefs." The judge analyzed these factors and then calculated the lodestar based on the percentage of successful requests. Although the judge used a mathematical approach, she also conducted a qualitative analysis using these factors and considered whether the requests furthered the purpose of OPRA. We conclude the judge was entitled to weigh heavily the fact that plaintiffs were successful only in fourteen out of fifty-eight requests, and that these requests were almost identical to ones previously denied. The court's approach did not constitute an abuse of discretion or an erroneous application of law.

However, because eleven requests were improperly denied, we remand the matter to the trial judge to adjust the award of attorney's fees accordingly. The

A-1810-16T3

judge must also determine a reasonable award of counsel fees related to plaintiffs' success in this appeal.

Affirmed in part, reversed in part, and remanded for the trial court to determine an award of counsel fees to plaintiffs consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1810-16T3